UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA FRANKLIN,

             Plaintiff,                     Case No. 24-cv-10887

v.                                 Hon. Brandy R. McMillion
                                 United States District Judge

FCA US, LLC d/b/a or f/k/a
CHRYSLER GROUP LLC
WARREN TRUCK ASSEMBLY
PLANT,

             Defendant.

_____ /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (ECF NO. 19)**

Sandra Franklin ("Plaintiff" or "Franklin") filed suit against FCA US, LLC

d/b/a or f/k/a Chrysler Group LLC Warren Truck Assembly Plant ("Defendant" or

"FCA") for racial discrimination in violation of 42 USC § 1981 ("Section 1981"),

Title VII, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); racial

hostile work environment ("HWE") in violation of Title VII; interference and

retaliation in violation of the Americans with Disabilities Act ("ADA") and

Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA"); failure to

accommodate in violation of the ADA and the PWDCRA; and disability

1

discrimination in violation of the ADA and the PWDCRA.  *See generally* ECF No.

1.  Before the Court is Defendant's Motion for Summary Judgment.  ECF No. 19.

The Motion has been fully briefed, so oral argument is unnecessary and the Court

will rule based on the record before it.  ECF Nos. 19, 23, 26; E.D. Mich. L.R. 7.1(f).

For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary

Judgment (ECF No. 19).

## I.

In February 2021, Plaintiff began working at an FCA assembly plant as a

supplemental bargaining unit employee.  ECF No. 19, PageID.116.  At the Company,

these are "employees who are part of the bargaining unit but do not have seniority

status.  Their employment is governed by the collective bargaining unit, including

M-16, a memorandum of understanding specific to supplemental employees."  *Id.*

Plaintiff's completed job application included, in relevant part, the following

agreement.  *Id.* at PageID.116-117.

> I agree that any lawsuit arising out of my employment with, or my application
> for employment with, FCA US LLC or any of its subsidiaries and affiliates
> must be filed no more than 180 days after the date of the employment action
> that is the subject of the lawsuit. While I understand that the statute of
> limitations for claims arising out of an employment action may be longer than
> 180 days, I agree to be bound by the 180 day period of limitations and I
> WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY. If a
> court determines that this provision allows an unreasonably short period of
> time to start a lawsuit, then the court shall enforce this provision as far as
> possible and declare the lawsuit barred unless it was started within the
> minimum reasonable time that the suit should have been started.

ECF No. 19-10, PageID.749.

Franklin also has type 2 diabetes.  ECF No. 19, PageID.117.  In connection with her diabetes, during her employment, she would periodically request time off, which FCA always granted. *Id.*; ECF No. 23, PageID.1018.  Although Plaintiff knew that the basis for those requests was her diabetes so she considered them "accommodation requests," *see* ECF No. 19, PageID.117, Defendant was never aware of the correlation between the two, *see* ECF No. 23, PageID.1018.  According to Plaintiff, her diabetes was clear from the doctors' notes she provided to Defendant, which included diagnostic codes indicating her diabetic condition.  ECF No. 23, PageID.1018.  Nevertheless, Plaintiff admits she never directly informed defendant of her condition.  ECF No. 19-2, PageID.234.

On June 20, 2022, Franklin's blood sugar was high at work so she visited Plant Medical.  ECF No. 19, PageID.117-118.  She was sent home and instructed to report back after 48 hours; and she returned to Plant Medical three days later on June 23rd. *Id.*  During which, her blood sugar was still elevated and she was advised to see her own medical provider prior to returning to work. *Id.* at PageID.118.  She met with her physician on June 30th, requested additional sick days off from work, and returned to work on July 5th. *Id.*

In accordance with FCA's policy for supplemental employees, it requested Franklin provide medical notes, and to contact a Business Resources ("HR")

manager during or after her time off.  *Id.*  Upon attempting to reinstate on July 5th, FCA's HR office informed Franklin that her medical note was inadequate and explained the required missing details.  *Id.*  On July 6th, her updated note was similarly denied.  *Id.*  Plaintiff maintains that both notes did in fact include the required information.  ECF No. 23, PageID.1019.  On July 7th, Franklin's healthcare provider sent her a revised note through her MyChart account.  ECF No. 19, PageID.119.  The note stated, in part, that "Sandra Franklin was seen in my clinic on 7/8/2022.  It is my medical opinion that Sandra Franklin should remain off work from June 19, 2022 through July 10, 2022. She may return to work without restriction on July 11, 2022. Ms. Franklin is capable of performing all job duties."  ECF No. 19-19, PageID.844.  It also included, "Diagnosis: Cystitis ICD10 N30[,]" and was signed by Carmin Watson, MA of Henry Ford Internal Medicine.  *Id.*

Defendant had concerns about the authenticity of the final medical note Plaintiff submitted and, accordingly, investigated it.  ECF No. 19, PageID.119.  This is part of the Company's "standard practice […] to call healthcare providers to verify medical notes that seem inauthentic or otherwise require clarification."  *Id.*  Upon its investigation, Franklin's doctor's office told FCA that it had not seen her for a visit on July 8th.  *Id.*  FCA's Business Resource team updated Labor Representative Sharta Burston ("Burston") with this information, advised her that Plaintiff's doctor's note was inauthentic, and recommend Plaintiff be terminated in violation

4

of FCA's Standards of Conduct ("SOC") 1.  *Id.* at PageID.119-120.  Burston agreed with the termination recommendation.  *Id.* at PageID.120.

Burston met with Franklin and her union steward, George Smith ("Smith") on July 14, 2022 to discuss her recommended termination under SOC 1.  ECF No. 19, PageID.120.   Burston recounted to Franklin the Company's effort to call her healthcare provider to verify the note; during which it learned that the note was not authentic. *Id.*  Nonetheless, Burston offered Plaintiff the opportunity to be reinstated at the Company if she could prove that the document was not falsified.  *Id.*  Plaintiff contends the meeting was actually scheduled to advise her that she was being terminated, and that Burston did not provide her with any opportunity to dispute FCA's findings about the medical note.  ECF No. 23, PageID.1021.  Franklin has no recollection of whether any comments about her race were made during the meeting. *Id.*

The parties disagree as to how the rest of the meeting unfolded.  Defendant's version of events is that Franklin began displaying disruptive and disorderly conduct, including yelling.  ECF No. 19, PageID.121.  Burston and Smith both asked Franklin to stop yelling.  *Id.*  Franklin asserts this was not so; and that, while she was "confused and hurt" by the incident, she "maintained professional behavior." ECF No. 23, PageID.1.  FCA, after warning Franklin, decided to convert Franklin's initial SOC 1 violation into an SOC 14/15 violation based on her behavior at the

5

meeting.  ECF No. 19, PageID.121.  Franklin left the meeting.  *Id.*  She admits that she was "emotionally distraught" after the meeting, so she went to the HR office to speak with a representative who had previously assisted her with medical notes. ECF No. 23, PageID.1022.  Then, Plaintiff asserts, "[a] blonde woman from labor began screaming at [her], saying 'you know what you did, you know you had a false letter' and 'just get out of here.'"  *Id.*  In FCA's account, Plaintiff continued being rude during her conversation with HR; therefore, she was asked to leave.  ECF No. 19, PageID.121.

Burston's supervisor's report states that the basis for Franklin's termination was SOC 14/15.  ECF No. 19, PageID.121-122.  Smith signed the report, and the union did not file any grievance in connection with the termination.  *Id* at PageID.122.  Burston also authored a note memorializing the July 12th meeting with Franklin.  *Id*.

On March 8, 2023, Plaintiff filed an EEOC charge.  *See generally* ECF No. 19-23.  On April 5, 2024, she filed her complaint in the present action.  *See generally* ECF No. 1.  Defendant filed its Motion for Summary Judgment on September 19, 2025, and it has now been fully briefed.  *See* ECF No. 19, 23, 26.  The Court has reviewed the parties' briefs, finds oral argument unnecessary, and will decide the Motion based on the record before it.  *See* E.D. Mich. L.R. 7.1(f).

6

## II.

There is a basis for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A nonmoving party, in turn, must present "significant probative evidence" to show that there is "more than some metaphysical doubt as to the material facts necessitating a trial[.]" *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023). The "facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The non-moving party may not rely on his pleadings alone but instead must demonstrate the existence of a genuine issue for trial by pointing to 'specific facts' that create such an issue." *Hamilton v. Myers*, 281 F.3d 520, 525 (6th Cir. 2002) (citation omitted). "A mere scintilla of evidence" is insufficient to forestall summary judgment." *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017). If Plaintiff provides conclusory assertions, supported only by his own opinions, this will not create a genuine issue of material fact that can withstand

7

a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 608 (6th Cir. 2008); *see also Johari v. Big Easy Rest., Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

## III.

A plaintiff may establish discrimination and/or retaliation "either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997), *see also Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 706 (6th Cir.1985) ("Direct evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent"), cert. denied, 490 U.S. 1064, 109 S.Ct. 2062, 104 L.Ed.2d 627 (1989). "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999).

Claims that are not based on direct evidence rely instead on circumstantial evidence, so the *McDonnell Douglas* framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, "[Franklin] must first establish a prima facie case for her respective […] claims; if she does, the burden shifts, and [FCA] must provide a 'legitimate, nondiscriminatory reason' for the

8

adverse action. […]   If [FCA] provides such a reason, the burden shifts back to [Franklin] to show that the proffered reason was pretextual." *Kellar v. Yunion, Inc.*, 157 F.4th 855, 879 (6th Cir. 2025) (cleaned up).  Nevertheless, the Court's duty is to "not allow 'this burden-shifting analysis to obfuscate the appropriate question— whether there exists a genuine issue of material fact.'" *See Jackson v. VHS Detroit Receiving Hops., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)).

## A. RACE DISCRIMINATION (COUNTS I, II, AND III)

Plaintiff alleges FCA racially discriminated against her.   ECF No. 1, PageID.5-6.  Defendant disputes this, contending dismissal is warranted because Plaintiff cannot prove the fourth element of her Section 1981 claim—that "she was treated differently than similarly situated non-Black individuals for the same or similar conduct."  ECF No. 19, PageID.123 (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).  The *McDonnell Douglas* framework applies to this claim so the Court must first determine whether Plaintiff can make a showing of her *prima facie* case of race discrimination.  So, Franklin must "demonstrate (1) that [s]he is a member of a protected class; (2) that [s]he suffered an adverse employment action; (3) that [s]he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated

more favorably than he[r]." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 365 (6th Cir. 2010). The final element is in dispute.

Plaintiff is correct that the similarly-situated inquiry is a fact-intensive one. ECF No. 23, PageID.1029-1030. However, the absence of a rigid requirement does not render the assessment wholly broad. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir.1998) (specifying that a plaintiff must "demonstrate that he or she is similarly-situated to the non-protected employee in **all relevant respects**.") (emphasis added). Here, Plaintiff fails to direct the Court's attention to any facts supporting her claim that Defendant treated her differently than a similarly situated non-Black employee. ECF No. 23, PageID.1029-1030. In fact, Plaintiff's comparator analysis begins and ends with a recitation of legal requirements—and that is plainly insufficient. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992) ("[T]o be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). Franklin therefore fails to adequately refute Defendant's position that she cannot prove the fourth prong of the *prima facie* test. Summary judgment in favor of Defendant on her Section 1981 race discrimination claim is appropriate as a result.

Plaintiff's other claims of race discrimination are pursuant to Title VII (Count II), ECF No. 1, PageID.7 and the ELCRA (Count III), *id.* at PageID.9.  The Court reviews both claims under a substantially similar standard as the now-dismissed Section 1981 claim.  *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (noting that race discrimination claims under Section 1981 and Title VII are analyzed under the same legal framework); *see also Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63 (6th Cir. 1985) (holding that plaintiff's failure to establish a prima facie case of race discrimination under Title VII meant her § 1981 claim failed as a matter of law as well); *see also Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (stating that Title VII and ELCRA claims are also similarly analyzed).  For all the same reasons, the Title VII and the ELCRA race discrimination claims are similarly subject to summary judgment.

## B. HOSTILE WORK ENVIRONMENT (COUNTS I and III)

Franklin also brings claims of a hostile work environment in violation of Title VII[1] and the ELCRA.  ECF No. 19, PageID.128.  The same standard applies to both

---

[1] Defendant argues that "[a]s a preliminary matter, Franklin's Title VII claim must be dismissed for failure to exhaust administrative remedies, as her EEOC charge only addresses her termination and does not mention any race-based comments or conduct."  ECF No. 19, PageID.129.  Plaintiff responds that the checked box for "race" in her EEOC charge is sufficient to satisfy the exhaustion requirement.  ECF No. 23, PageID.1040-1041.  The Court agrees with Plaintiff that her EEOC charge, as is, suffices.  *See Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229 (6th Cir. 2017) ("Here, on Russ's charge she checked the boxes for 'Retaliation' and 'Disability,' but left all others blank (including those marked 'Race,' 'Color,' and 'Sex'). The narrative portion of the charge said nothing about discrimination on the basis of race or gender"). Considering that, here,

11

claims.[2]  Defendant moves to dismiss the claims because Plaintiff "has not identified any offensive conduct or comments directed to her based on her race, and she admits she never complained about race-based harassment during her employment."  *Id.* at PageID.129-130.   Given this, they maintain, Plaintiff cannot show that FCA's alleged conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Id.* at PageID.129 (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

Plaintiff maintains that she has established her race-based HWE claims by alleging that (1) "[a] blonde woman from labor began screaming at Plaintiff, saying 'you know what you did, you know you had a false letter' and 'just get out of here'" and (2) Plaintiff "was labeled as violent and allegedly escorted by security without being afforded the opportunity to discuss the alleged fraudulent note."  ECF No. 23, PageID.1041-1042.  Plaintiff argues that a reasonable jury could find that "these actions were designed to reinforce racial stereotype that black women are aggressive and disorderly."  *Id.*  The Court does not arrive at the same conclusion.  Specifically, without resorting to impermissible speculation, no reasonable jury could find that Plaintiff's allegations rise to the level of a racially hostile work environment.  *See*

---

unlike in *Russ*, Franklin checked the box for "race," the Court will treat that as an indication of her intent to pursue race-based claims.

[2] *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (reiterating that the Court reviews alleged race discrimination claims brought under § 1981 and the ELCRA under the same standard as those brought under Title VII).

*Snyder v. Ohio Dep't of Rehab. & Correction*, 702 F. App'x 341, 344 (6th Cir. 2017) ("[Th]is case turns, however, on a simple issue: whether a plaintiff can proceed to a jury trial based wholly on unsupported speculation. There is a simple answer: he cannot.").

Plaintiff's citations to the record are equally unavailing.   ECF No. 23, PageID.1041-1042.  For instance, nearly all the factual support for her HWE claims merely recounts, from Plaintiff's point of view, what allegedly occurred shortly after her termination meeting with Burston and Smith.  *Id.*  This is not enough to create a genuine issue of material fact as to whether Plaintiff's experience at FCA was sufficiently severe or pervasive.[3]  At best, Plaintiff relies on a "mere utterance" that occurred during the meeting, which falls short of the required threshold.  So, even viewing the facts in the light most favorable to Franklin, the evidence does not reveal any instance of racial hostility on which she can rely to present these claims to a jury.  And so, Defendants are entitled to summary judgement on Counts I and III.

---

[3] *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) ("When assessing whether conduct has become objectively severe or pervasive, the Supreme Court has instructed courts to consider a nonexhaustive list of factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'").

13

## C. DISABILITY DISCRIMINATION CLAIMS (COUNTS VIII and IX)[4]

Plaintiff next advances disability-based claims, beginning with alleged violations of the ADA (Count VIII) and the PWDCRA (Count IX).[5] ECF No. 1, PageID.16-19. The claims are evaluated under a similar standard. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 763-764 (6th Cir. 2012).[6] The *McDonnell Douglas* framework applies because these claims are also based on circumstantial evidence. Accordingly, Plaintiff must first satisfy a *prima facie* case of disability discrimination, which requires demonstrating that "(1) she has a disability, (2) she is otherwise qualified for the job with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know of her disability, and (5) her position remained open, or she was replaced. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566-567 (6th Cir. 2023) (cleaned up). Defendant's stance is that (1) "there is no evidence that Burston knew or should have

---

[4] The Court notes that in the Motion, Defendant labels "Disability Discrimination" as "Counts IV and V." However, based on the Complaint, the Court correctly re-labels the claims as Count VIII, *see* ECF No. 1, PageID.16 ("Discrimination on the Basis of Disability in Violation of Title I of the Americans With Disabilities Act of 1990 42 U.S.C. § 12101, *et seq.* ('ADA'")) and Count IX, *see id.* at PageID.18 ("Discrimination on the Basis of Disability in Violation of the Michigan Persons With Disability Act, MCL 37.1201, *et seq.* ('PWDCRA'")).

[5] Under the ADA, employers are prohibited from discriminating against disabled, qualified individuals in "… the hiring, advancement, or discharge of [such] employees." 42 U.S.C. § 12112(a); and pursuant to the PWDCRA, "an employer may not discharge or otherwise discriminate against an individual because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1101 *et seq.*

[6] "The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim.'" (citation omitted).

known that Franklin had a disability[,]" and (2) "Franklin cannot show that she was treated differently than similarly situated non-disabled employees for the same or similar conduct." ECF No. 19, PageID.136-137. It argues that both defects are fatal to Plaintiff's disability claims; and the Court agrees.

In *Hammon v. DHL Airways, Inc.*, the Sixth Circuit clarified that "[a]n employer has notice of the employee's disability when the employee tells the employer that he is disabled." 165 F.3d 441, 450 (6th Cir. 1999). Defendant first challenges Franklin's notice of a qualifying disability. ECF No. 19, PageID.131-132. It asserts that she only (1) requested time off for "illness" and (2) provided a medical note to FCA that stated she was not at work due to a "cystitis"—neither of which is enough to sustain this element of the claim. *Id.*

Plaintiff, on the other hand, relies primarily on two work incidents as evidence of Defendant's notice of her disability. ECF No. 23, PageID.1038. First, on June 20, 2022, "Franklin fell ill at work and reported to Plant Medical, where her blood sugar was found to be high[,]" so she was sent home and instructed to return to work after 48 hours. *Id.* at PageID.118. Then, three days later on June 23rd, Plaintiff went back to the Plant Medical office, it was determined that her blood sugar was still high, so she was told to see her own medical provider before coming back to work. *Id.* Plaintiff confirms she proceeded to go to her own doctor for a follow-up, and they informed her that she "would need to be off from work due to these issues from

June 19, 2022 to July 11, 2022." ECF No. 1, PageID.3. The Court notes the inconsistency in Plaintiff's timeline, given that June 19th precedes June 20th—the date of her initial medical incident at work. More importantly, however, Plaintiff has not adequately demonstrated that Defendant knew of any disability.

Furthermore, there remains an outstanding question as to whether Plaintiff has established, as a matter of law, that she has a disability. "Under the ADA, a 'disability' means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. [… Similarly, under] the PWDCRA […] a disability, [is] defined as a 'determinable physical or mental characteristic' that 'substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position'; a history of such a characteristic; or being regarded as having such a characteristic." *Salim v. MGM Grand Detroit, L.L.C.*, 106 F. App'x 454, 458 (6th Cir. 2004).

There is no dispute about Plaintiff's physical impairment—diabetes. So, she must next show that her condition substantially limits one or more of her major life activities. When asked about this during her deposition, Plaintiff provided the following response.

> Every day, I have to take medication. Every day, I have to poke myself three, four times a day or more. Every day, I have to -- I have to monitor everything I eat, make sure I sleep properly, and make sure that -- that my – 'cause right now I'm having -- I just have to make sure I maintain my eating because I have a -- something with my diabetes. Like, I have to maintain my sugar, and if I don't, it causes something called gastritis, and it causes me to get sick.

ECF No. 19-2, PageID.165. The "substantially limits" inquiry involves determining whether a plaintiff is  "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 282 (6th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(1)(i)–(ii)).

Plaintiff does not specifically identify her alleged "substantial limitation," so the Court will infer it as best it can from the existing record.[7]  And in doing so, when considered alongside the relevant case law, the Court finds no substantial limitation. In *Salim*, for example, the plaintiff "[took] two insulin injections a day for her

---

[7] *See Salim*, 106 F. App'x at 459 "Although Plaintiff is a diabetic, her 'diabetic status, per se, is not sufficient to qualify as a disability under the ADA.' […] Her diabetes must substantially limit one or more major life activities."

diabetes, […] her doctors […] told her to stop smoking, diet, exercise, lose weight, and avoid foods that are fatty, salty, and sweet." *Salim*, 106 F. App'x at 455. The facts presently before the Court are comparable, even with Franklin's testimony that she pokes herself "four times a day or more." ECF No. 19-2, PageID.165. Besides that, Franklin has not provided the Court with enough evidence to show that there is a genuine dispute of material fact about whether her daily life is substantially limited due to her diabetes. For example, her testimony that she has increased susceptibility to gastritis because of her diabetes, on its own, is weak to support this claim. *See e.g., McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 283 (6th Cir. 2007) ("The fact that McPherson needed to check his blood sugar regularly and to attend medical appointments does not establish that he was substantially limited in his ability to see or care for himself."). For these reasons, Franklin's disability claims do not survive summary judgment; therefore, the Court need not conduct a separate similarly-situated analysis.

## D. FAILURE TO ACCOMMODATE CLAIMS (COUNTS VI and VII)

Next, Plaintiff alleges Defendant failed to accommodate her disability despite being required to do so under the ADA (Count VI) and the PWDCRA (Count VII). ECF No. 1, PageID.12-16. Unlike her previous claims, which were subject to the *McDonnell Douglas* framework, the Court will review the failure to accommodate claims based on direct evidence. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409,

18

416-17 (6th Cir. 2020) (*citing Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)).   ("Because failure to accommodate is listed in the [ADA's] definition of disability discrimination, [. . .] claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.").   However, before the Court can begin its analysis, it must first determine whether a requested accommodation is at issue in this action.   *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-1047 (6th Cir. 1998) ("There is no question that the EEOC has placed the **initial burden of requesting an accommodation on the employee**. The **employer is not required to speculate as to** the extent of the employee's disability or the **employee's need or desire for an accommodation**.") (emphasis added).   And here, the Court finds that there is not.

At most, Plaintiff informed her employer of illness-related absences; but she never provided additional information that would reasonably connect those absences to any disability.   During Plaintiff's deposition, Defendant explicitly questioned her about this issue.

> *Defendant:*  When you asked for days off […] previously, did you tell them that it was due to diabetes?
>
> *Plaintiff:*  […] I just told them it was a sickness. I -- I didn't tell them it was my diabetes, but I just told them it was 'cause of illness.

> *Defendant:* Did you ever provide FCA any information regarding your diabetes diagnosis?
>
> *Plaintiff:* Well, every time I turned back in a doctor's note, they asked for a diagnostic code on my -- on my slips. So I was thinking they already understood, you know, when I -- when I would turn it back in, what the diagnosis was. So I never thought I had to explain.

ECF No. 19-2, PageID.234. The case law makes clear that Plaintiff's requests for sick days off—which Defendant granted—do not, by themselves, amount to requests for accommodations. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418-19 (6th Cir. 2004) (holding that under the ADA, employee's statements about being 'ill' or 'not feeling well' are not a request for leave as an accommodation for diabetes). In fact, when directly asked whether she "[told] anyone in labor that [she was] absent because of diabetes[,]" Plaintiff answered, "no." *Id.* at PageID.229. Given this, the Court will not decide whether FCA failed to provide Plaintiff with an accommodation she concedes she never sought.

## E. DISABILITY-BASED RETALITION & INTERFERENE (COUNTS IV and V)

Preliminarily, the Court acknowledges—and finds persuasive—Defendant's argument that Plaintiff abandoned her retaliation and interference claims by failing to respond to Defendant's arguments for summary judgment for those claims. Such

abandonment is a sufficient basis for dismissal.[8] Nevertheless, for the sake of completeness, the Court will address the merits as well.

## 1. Retaliation (Counts IV and V)

According to Plaintiff, Defendant retaliated against her "for taking off several days to treat her disability, which caused Defendant [to] unlawfully terminate her for false reasons[,]" in violation of the ADA and the PWDCRA.  ECF No. 1, PageID.11-12.  For her retaliation claims to survive, Franklin must show that "(1) she engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against [her]; and (4) there was a causal connection between the protected activity and the adverse action." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Defendant asserts that Plaintiff's requested time-off was not a protected activity.  ECF No. 19, PageID.135-136.  But even if the Court were to assume, *arguendo*, that the requests constituted a protected activity, Plaintiff's claim would still fail at the final element because there is no causal connection between her requests and termination.  To start, Plaintiff requested illness-related absences from her employer, and she does not dispute that Defendant granted each of them.  *See*

---

[8] The Court notes that Plaintiff mentions the claims in the issues presented section of her Opposition Brief; however, the brief contains no analysis of either claim.

ECF No. 19-2, PageID.233-234 ("They […] gave me days off when I needed it.").

So, the Court is left to assume that Plaintiff's sole alleged "adverse action" is her termination.  Plaintiff fails to show that, based on the factual record, there is "an inference ... that the adverse action would not have been taken had [she] not engaged in protected activity." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687 (6th Cir. 2013) (cleaned up).  In other words, Plaintiff cannot show that, but-for her requested sick leaves, she would not have been terminated based on SOC 1 (fraudulent doctor's note), followed by SOC 14 (improper verbal conduct) and SOC 15 (improper physical conduct).  ECF No. 19, PageID.115-116; ECF No. 23, PageID.1031-1036.  Plaintiff's subjective assessment of her termination to demonstrate causation is not enough.  Her retaliation claims are consequently dismissed on summary judgment.

## 2.  Interference (Counts IV and V)[9]

Under the ADA, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" a right protected by the ADA. 42 U.S.C. § 12203(b).  For Franklin's interference claims to survive, she must "adequately show a causal connection between h[er] accommodation request and h[er] leave, as was required for h[er] retaliation claim." *Kelly v. Graphic Packaging*

---

[9] Under the PWDCRA, there is no independent cause of action for interference. *See generally* MICH. COMP. LAWS § 37.1602; *see also Catchings v. Hazel Park Sch. Dist.*, No. 2:23-CV-11313, 2025 WL 2640419, at *7 (E.D. Mich. Sept. 12, 2025) (finding the same).

*Int'l, LLC*, No. 24-1400, 2025 WL 573766, at \*5 (6th Cir. Feb. 21, 2025), cert. denied, 146 S. Ct. 189, 223 L. Ed. 2d 61 (2025).  As the Court has already explained, Plaintiff did not make any accommodation request to her employer.  *See supra* III.D. And even if she had, the Court has already found no causal connection between Plaintiff's requests for sick days and her termination.  *See supra* III.E.1.  To that end, Defendant is entitled to summary judgment on Counts IV and V.

## F.  STATE LAW CLAIMS (COUNTS III, V, VII, and IX)

According to Defendant, dismissal of Plaintiff's state law claims is independently warranted because each is time-barred based on her employment application with FCA.  ECF No. 19, PageID.138-139; *see also* ECF No. 19, PageID.116-117 ("In consideration for FCA US considering Franklin's application for employment with FCA US, Franklin agreed to a 180-day limitations period for any claims arising out of an employment action and waived any statute of limitations to the contrary.").  Plaintiff disputes this, arguing "[a]rbitration clauses with shortened limitations period in employment contracts are invalid unless the employer can prove that such a contract of adhesion is reasonable, pursuant to recent Michigan Supreme Court Opinion in *Rayford v. American House Roseville I, LLC* (Docket No. 163989) on July 31, 2025."  ECF No. 23, PageID.1017.

As Plaintiff correctly notes, in *Rayford*, the Michigan Supreme Court held that contracts such as the one in this case are "subject to heightened judicial scrutiny to

23

determine whether the provisions are reasonable." *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754, at *15 (Mich. July 31, 2025).  To assess such reasonableness, the Court must examine whether "(1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained."  *Id.* at *18.  Plaintiff accuses Defendant of "offer[ing] none of that analysis; [and] simply assert[ing] that 180 days 'aligns' with EEOC timing."  ECF No. 23, PageID.1043.  She further claims that "at a minimum, discovery is necessary on reasonableness and unconscionability, and if either is found, the statutory limitations period applies."  *Id.*  The Court finds the opposite to be true.

Plaintiff's lack of any, let alone compelling, facts supporting the relevant *Rayford* factors is fatal to her argument that *Rayford* bars enforcement of the statute of limitations here.  ECF No. 23, PageID.1042-1043.  Nor is the Court convinced that there is a need for discovery, especially considering the legal nature of this issue.  Finally, the Court is persuaded by Defendant's unchallenged position that "Franklin obtained legal counsel in August 2022, a month after her termination, but she did not file her EEOC charge until March 8, 2023, 238 days after her termination."  ECF No. 19, PageID.139.  Plaintiff does not point to anything in the record to overcome the presumptions that (1) she had sufficient opportunity to investigate and file her

24

state law claims within the required 180 days, (2) practically, the requisite period was not so short as to effectively abrogate her right to bring the claims, and (3) the deadline did not precede her awareness of any alleged loss or damage.  And so, all her state law claims are time-barred and dismissed.

## IV.

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 19) as to all claims is **GRANTED**, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

***This is a final order that closes the case.***

Dated: May 14, 2026                                              s/Brandy R. McMillion
     Detroit, Michigan                                        Hon. Brandy R. McMillion
                                                 United States District Judge